STATE OF FLORIDA, *ex rel.* RIVERS H. BUFORD, ATTORNEY
GENERAL, *Relator,* v. PINELLAS COUNTY POWER COM-
PANY, A CORPORATION, *Respondent.*

Opinion Filed March 17, 1924.

This case was decided by Division B.

1. Power which is sufficient to authorize a municipality to pro-
vide for the lighting 'of the streets and for supplying light to
the inhabitants of the municipality implies, in the absence of
special restriction, the power to make a proper contract with
an individual or corporation therefor.

2. Authority to provide within lawful limitations for supplying
and furnishing lights to a city and its inhabitants is a usual
and necessary power of a municipality, and such power may
be granted in general terms where there is nothing in the
enumeration of particular powers to limit in this particular
the operation of the general powers conferred.

3. Power "to regulate, improve, alter, extend and open streets,"
"to provide for the lighting of streets of the city or town
* * * and do and perform all such other act or acts as
shall seem necessary and best adapted to the improvement
and general interest of the city or town," and "to raise by
tax and assessment on all real and personal property and by
license on professions, business and occupations carried on
within the corporation, all sums of money which may be re-
quired for the improvement and good government of the city,
and for carrying out the powers and duties herein granted
and imposed," is sufficient to authorize the municipality to
erect and maintain an adequate plant for supplying electric
lights and power to the city and its inhabitants, 'or to make
a proper contract with an individual or corporation to do so,
and to grant such franchises and pass such ordinances as are
necessary and appropriate to accomplish this purpose.

4. Under the provisions of Section 8, Article VIII of the Constitution, it is competent for the legislature, by a duly enacted statute, to confer any proper municipal power upon a city or town where no other provision or principle of organic law is violated.

5. By Section 30 of Article XVI of the Constitution, irrespective of the provisions of any grant or contract inconsistent therewith, the legislature may, by statute, empower the duly constituted authorities of the municipality to prescribe, by valid ordinances, just and reasonable rates to be charged for supplying and furnishing electric lights and power to such municipality and its inhabitants by a person or corporation lawfully engaged in rendering such service.

6. Where the law authorizes the regulation of service rendered the public, such law becomes a part of and controls contracts providing for the public service.

7. The duly ordained and otherwise valid franchise of a corporation for a period of ninety-nine years to maintain and operate within the municipality granting such franchise an electric plant or lighting system for the purpose of furnishing electric lights and power to the city and its inhabitants, will not be forfeited in quo warranto proceedings upon the ground that the grant is for an unreasonable or unlawful period of time, where it appears that the service rendered is subject to public regulation, that the corporate life of the grantee has not expired, and that the period of time during which the grant has run is less than the maximum term fixed by a subsequently enacted statute for such grants, and especially so where the municipality has stood by and acquiesced in the expenditure by the grantee corporation of large sums of money in the construction and extension of its plant and has so dealt with the grantee corporation as to estop itself at the time of the institution of the proceedings from asserting the illegality of the franchise upon this ground.

A case of original jurisdiction.

Demurrer overruled. Information quashed.

*Mabry, Reaves & Carlton,* for Relator;

*Knight, Thompson & Turner* and *Cook* and *Harris,* for Respondent.

WEST, J.—By quo warranto proceedings instituted in this court by the Attorney General in the name of the State against the Pinellas County Power Company, a corporation, the rights and franchises of the respondent to maintain and operate in the city of St. Petersburg an electric plant or lighting system for the purpose of lighting by electricity the streets, wharves and public squares of said city and the dwellings, grounds and places of business of its inhabitants, are assailed, and the respondent is commanded to answer by what authority it exercises the said privileges and franchises.

The information, among other things, alleges:

"That said respondent claims said privileges, rights and franchises under and by virtue of a certain supposed grant made by the then town of St. Petersburg in the year 1897, a copy of which is hereto attached, marked Exhibit 'A' and made a part of this petition. But it is herein averred that said supposed grant was and is null and void and confers no rights or privileges upon the said respondent, upon the grounds and for the reasons that the said town of St. Petersburg when the said grant was attempted to be made was a municipal corporation existing under the general laws of the State of Florida for the incorporation of cities and towns, and therefore had no power to grant the franchises and privileges specified in the said "Exhibit 'A' hereto attached. And if any franchises and privileges were lawfully granted thereby,

they were for the term of twenty years only from the 2nd day of February 1897, and therefore expired on the 2nd day of February, 1917. Since which time the assumption of the respondent, who claims under the said supposed grant as a successor in title of F. A. Davis therein named, to exercise the franchises and privileges named in said Exhibit 'A,' has been unlawful, and wholly without legal warrant.

"Moreover, it is hereby averred that the said attempted grant of franchise by the said Exhibit 'A' for the period of ninety-nine years therein named was and is for an unlawful and unreasonable period of time and creates a practical perpetuity, and the attempted grant of exclusive rights and of exemption from taxation as specified in said Exhibit 'A' were and are wholly unlawful. All of which said liberties, privileges and franchises the said respondent, during all the time aforesaid, has usurped, and still does usurp, and unlawfully exercises in the County of Pinellas and city of St. Petersburg, to the damage and prejudice of the people of the State of Florida, and especially of said city."

By answer the respondent, Pinellas County Power Company, avers that it is a corporation duly organized under the laws of the State of Florida, its Letters Patent having been issued on July 18, 1899; "that it is doing business in the city of St. Petersburg under, and by virtue of a certain franchise granted to F. A. Davis and his associates, by the town of St. Petersburg, Ordinance No 3, which was adopted by the Town Council on December 23rd, 1896, approved by the Mayor on the 24th day of December, 1896 and ratified by a unanimous vote of the freeholders of the town of St. Petersburg at a special election held for that purpose on the 2nd day of February, 1897, a certified copy of said franchise being thereto attached,

and incorporated in and made a part of this answer, same being marked Exhibit 'A,' and that said F. A. Davis and his associates, immediately upon the charter being issued to this respondent, as hereinbefore alleged, transferred said franchise to this respondent, and that this respondent has been operating under said franchise since its incorporation and is still operating under said franchise; that said town of St. Petersburg had ample authority to grant said franchise under the General Laws of the State of Florida as they existed at the time; that subsequently said incorporation and the acts and doings of the said town of St. Petersburg were validated by general law and that by Chapter 6772 of the Acts of 1913, revising the charter of the city of St. Petersburg (section 115), all ordinances of said city then in effect were continued in full force; that said Ordinance No. 3, by which said franchise was granted to respondent has never been repealed but is of full force and effect. It is denied that such grant is for an unreasonable or unlawful period of time. Any exclusive right under the franchise or any right under the tax exemption clause of the franchise, both of which, so it is averred, have long since expired are disclaimed, and respondent avers and asserts the right to continue to transact business in the City of St. Petersburg, in accordance with the terms of said franchise for the period granted, unless it should be terminated by mutual consent or unless the property of respondent should be condemned and purchased under the power of eminent domain. It is further averred that the city of St. Petersburg has neither offered to buy nor attempted to condemn respondent's property, and that respondent has expended more $1,500,000 in the erection and construction of its plant and equipment, has issued and sold in the open market to innocent purchasers in good faith $1,000,000 first mortgage bonds secured by its

real estate, franchise and properties, all of which was known to the city of St. Petersburg which stood by without objection or question, allowing respondent to expend its money and the money of its stockholders and investors in its securities in the erection, extension and maintenance of its plant, and that thereby and because of various affirmative acts of said city of St. Petersburg regulating the conduct of its business in said city and various contracts with respondent for power for its public utilities and its inhabitants, the said city of St. Petersburg is estopped to deny to respondent its further exercise of the privileges and franchises granted to it by said ordinance.

The pertinent provisions of the ordinance referred to in the information and the answer, namely, Ordinance No. 3, under which respondent claims and upon which it relies for its franchise rights and privileges, are as follows:

"That the town of St. Petersburg does hereby give and grant to F. A. Davis, of Philadelphia, Pennsylvania, and his associates, who are to organize as a corporation for that purpose under the laws of the State of Florida, by such name as they may choose, and to their successors and assigns, the right and privilege of and franchise for constructing, maintaining and operating, for the period of ninety-nine years, in the said town of St. Petersburg, an electric plant or other lighting system, for the purpose of lighting by electricity or other means, the streets, wharves, and public squares of said town, and the dwellings, grounds and places of business of its inhabitants.

"That the said grantees shall have, for the period of twenty years, the exclusive privilege, franchise, power, right and authority to lay, construct, erect and maintain, in and upon the streets, squares and wharves of said town, as they now exist, or may hereafter be constructed, opened, laid out, or extended, within the present limits of said

town, or within such territory as may hereafter be added to it, all necessary poles or other supports, conductors, or appliances for the poles or other means of conveyance to be used in transmitting electric currents or other illuminating agencies; and for that purpose, to make all necessary excavations in said streets and squares; and shall have the power, right and authority to fasten and to stretch or lay along the line of said poles or other means of conveyance all the wires or other mediums necessary for transmitting and conyeving the electric currents or other illuminating agencies to be used in said business; and shall have the right, privilege, and authority to construct, erect and maintain in said town a powerhouse or central plant or plants, with all the engines, boilers, dynamos, machinery, devices and appliances that may be required for generating electricity or other illuminant and for carrying on the business aforesaid.''

The ordinance also cntains a provision by which the town of St. Petersburg obligated itself to enter into a contract with the grantee (which contract was embodied in the ordinance) for the taking of certain electric lights for town lighting for the term of twenty years at a fixed price per year per light and for the remission of certain portions of town taxes upon the plant of the grantee for said period, and said ordinance gives to the grantee the right to enlarge and extend its plant and develop its service to meet the growth and progress of the town, and to make seasonable regulations for the use of lights by private parties and to charge reasonable rates therefor, not to exceed a fixed maximum schedule of rates.

The answer was demurred to.

Two questions are presented: first did the town of St. Petersburg, at the time of the adoption of the ordinance upon which respondent relies, possess the power to grant

the franchise asserted? and second, if so, is the franchise relied on void because granted for an unreasonable and unlawful period of time as alleged? We consider them in the order stated.

The generally accepted rule is that authority to a municipality to provide for and supply to its inhabitants water or light, whether derived from an express grant or from the general police power of the city to preserve the public health, public safety and general welfare, confers upon the municipality authority to contract with an individual or corporation for a supply of water or light, and "any power which is sufficient to authorize the city to provide a supply of water or light implies, in the absence of special restriction, the power to make a proper contract with an individual or corporation therefor." Dillon's Municipal Corporations, 5ed. Sec. 1302; Lexington ex rel. v. Lafayette County Bank, 165 Mo. 671; Gas Company v. Davenport, 124 La. 22; East Jordon Lbr. Co. v. East Jordan, 100 Mich. 201; Greenville v. Greenville Water Works Co., 125 Ala. 625; Overall v. Madisonville, 125 Ky. 684, 102 S. W. Rep. 278.

In Overall v. Madisonville, supra, the court said: "The public lighting of the streets of cities is of modern origin. Yet the necessity for lights in a city is scarcely less now than its necessity for water. Indeed, private wells and cisterns, and resort to natural streams by individuals for their necessary water, could as easily dispense with public waterworks, and more justly perhaps, than could private property owners light the adjacent streets and public places. It is found that light is not only essential to the safety of travelers to prevent their coming in contact with obstructions, but they perform a most valuable office in preventing crime. It is known that crime thrives best in darkness. A good light is the equivalent of a good

policeman in preventing certain forms of crime. It is therefore universally held now that it is clearly within the police power of cities, even without express authority, to provide public lighting of their streets at the public expense. (cases cited)."

In State ex rel. v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183, this court said: "Among the usual functions of a municipal government are those of granting privileges in the use of its streets for the purpose of rendering services of a public nature, such as furnishing the municipality and its inhabitants service necessary or useful for the common welfare of all. The furnishing of water for use and for fire protection is a service necessary or useful for the individual and collective well-being of a city and its inhabitants. Authority to make provisions within lawful limitations for securing or furnishing to a city and its inhabitants an abundant supply of good water for all purposes, is a usual and necessary power of a municipality, and such power may be included in powers given in general terms, where there is nothing in the enumeration of particular powers conferred to limit in this particular the operation of the general powers conferred."

The general laws of the state for the incorporation of cities and towns, under which the town of St. Petersburg was created, conferred upon such corporations "full power and authority to take and to hold property, real and personal and mixed, and to control and dispose of the same for the benefit and best interests of the corporation aforesaid, and to sue and be sued, implead and be impleaded, and to do all such things as are incident to corporate bodies" (Sec. 665. Rev. Stat.); "to regulate, improve, alter, extend and open streets" (Sec. 675, Rev. Stats); "to provide for the lighting of streets of the city

or town * * * and do and perform all other act or acts as shall seem necessary and best adapted to the improvement and general interest of the city or town'' (Sec. 693, Rev. Stat.) ; and ''to raise by tax and assessment on all real and personal property and by license on professions, business and occupations carried on within the corporation, all sums of money which may be required for the improvement and good government of the city, and for carrying out the powers and duties herein granted and imposed.'' (See 702, Rev. Stat.).

In addition to the foregoing, Chapter 4166, Acts of 1893, provided that ''the counsel of any city or town of this State is hereby authorized and empowered to enter into an agreement, or agreements, with gas, electric lights, or water works companies, for lighting the streets or constructing and operating water works in such city or town; provided that such agreement or agreements shall be ratified by a majority vote of the freeholders of such city or town, and voting at an election to be held for the purpose of ratifying said agreement, or agreements.''

Such grants of power to the municipality are sufficient basis for the ordinance, and its adoption in the manner required is not disputed. Capital City Light Co. v. Tallahassee, 42 Fla. 462, 28 South. Rep. 810; Mernaugh v. Orlando, 41 Fla. 433, 27 South. Rep. 34; Jacksonville Electric Co. v. Jacksonville, 36 Fla. 229, 18 South. Rep. 677; State ex rel. v. Jacksonville Street Ry. Co., 29 Fla. 590, 10 South. Rep. 590. The futile attempt to make the franchise exclusive or to exempt property of respondent from taxation does not vitiate the grant. State ex rel. v. Tampa Water Works Co., supra. Besides, the time within which such provisions were to operate has expired.

Does a grant for a period of ninety-nine years render the franchise void because for an unreasonable length of

time and require a holding to that effect, although less than thirty years of that period have elapsed? In some jurisdictions the period for which such franchise may be granted is fixed by constitution or statutory or charter provision. At the time of the grant to respondent of the franchise challenged in this proceeding, Chapter 4859, Acts of 1899, forbidding the granting by municipalities of franchises or rights for certain purposes for any time exceeding thirty years, or without reserving the right at and after the expiration of such term to purchase the property used under such franchise, was of course not in existance. Nor is there express inhibition in the State constitution against the granting by a municipality of a franchise in perpetuity. On the contrary, with respect to municipalities the legislature has the power to "provide for the government, to prescribe the jurisdiction and *powers* and to alter or amend the same at any time." Sec. 8, Art. 8, Const. And by section 30 of Article 16 of the Constitution, irrespective of the provision of any grant or contract inconsistent therewith, the legislature has "full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations * * * performing * * * services of a public nature." Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; Gainesville C. & E. Co. v. Gainesville, 63 Fla. 425. 58 South. Rep. 785. Town of Brooksville v. Florida Tel. Co., 81 Fla. 436, 88 South. Rep. 307.

In some jurisdictions, including the Supreme Court of the United States, it is held that a franchise to a public service corporation in which no time for expiration of the grant is stated, is a grant in perpetuity, and such grants are held to be valid and enforceable. City of Covington v. South Covington & Cin. Street Ry. Co., 246 U. S. 413, 2

A. L. R. 1099 and note where many cases are assembled. But the numerical weight of authority seems to be that a franchise granted by a municipality without limit of duration will not be construed to be in perpetuity. 28 Cyc. 655; City of Joseph v. Joseph Waterworks Co., 57 Ore. 586, 111 Pac. Rep. 864; Cedar Rapids Waterworks Co. v. Cedar Rapids, 118 Ia. 234, 91 N. W. Rep. 1081; People v. Central Union Tel. Co., 232 Ill. 260, 83 N. E. Rep. 829; East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 90 N. E. Rep. 40; People ex rel. v. Commercial Tel. & Tel. Co., 277 Ill. 265, 115 N. E. Rep. 379. As to the legal effect of such a grant there is a difference of view. Some decisions hold such grants void, others hold them valid for the corporate life of the grantee, while others hold them good for what may be regarded under the circumstances as a reasonable time.

We have found that the municipality possessed the power to make the grant and adopt the ordinance. It is not *ultra vires*. The corporate life of respondent is for ninety-nine years from July 18, 1899. If the franchise extends through that period its expiration is several years in the future. It would seem that in proportion to the measure of the reserved power of the State to strip the ordinance of unreasonable features, without affecting its validity as a contract, and to regulate the conduct of the business authorized, it should not be held unreasonable. And while the only feature of this ordinance alleged to be unreasonable is the period for time for which, according to its express terms, it is to run is not a subject of regulation, yet the power of regulation by the State or municipality may be regarded as an element in dealing with the question of alleged unreasonableness in the term or period of the grant.

The contention is that a grant for ninety-nine years

amounts to a grant in perpetuity, that such a grant is contrary to public policy and is therefore void. We do not, however, regard it as essential that we pass upon the question of whether a grant for ninety-nine years is equivalent to a grant *in perpetuo*. If it should be assumed that the ordinance, notwithstanding the State's power to regulate the conduct of the business of respondent, runs for a period of time beyond the power of the municipality to grant, it will not, for that reason, be judicially declared invalid, but will be held to be a grant for the corporate life of the respondent, or at the least for a period which may be held, from all the circumstances of the case, reasonable in length. Peoople ex rel. v. Commercial Tel. & Tel. Co., supra; People ex rel. v. Economy Light & Power Co., 241 Ill. 290, 89 N. E. Rep. 760; Peoople v. Central Union Tel. Co., supra; State ex rel. v. Des Moines Ry. Co., 159 Ia. 259, 140 N. W. Rep. 437; Columbus Water Co. v. Columbus, 48 Kan. 99, 28 Pac. Rep. 1097; City of Barre v. Perry & Scribner, 82 Vt. 301, 73 Atl. Rep. 574. And particularly so since the municipality, after having granted the franchise for a period of ninety-nine years, has so dealt with the respondent as to estop itself at this time from asserting the illegality of the franchise upon the ground that it runs for an unreasonable long period of time. McQuillian on Corp., vol. 4, Sec. 1687; People ex rel. v. Rock Island, 215 Ill. 488, 74 N. E. Rep. 437; Chicago v. Union Stock Yards, etc., Co., 164 Ill. 224, 45 N. E. Rep. 430; Bradford v. New York & P. Tel. & Tel. Co., 206 Pa. 582, 56 Atl. Rep. 41; East Tennessee Tel. Co. v. Frankfort, 141 Ky. 588, 133 S. W. Rep. 564.

The exercise of the franchise by respondent has been for less than thirty years, the period now allowed by statute.

The demurrer of the relator to the answer admits that

the city has stood by while respondent has at very great · expense improved and extended its plant, that the city has, from time to time by various ordinances regulating its operation and conduct, recognized respondent's rights under its franchise to use and occupy the city streets with respondent's facilities for furnishing lights to the city and its inhabitants, and that at the time of the institution of this proceeding the city was under contract with the respondent for power with which to operate its. public utilities.

The State issued a corporate charter to respondent for ninety-nine years for the purpose of engaging in the particular business being done by it, and the contract relations of respondent with the city, pursuant to charter powers of respondent, show ample authority to exercise the rights and franchises here challenged by the State.

The respondent having shown the right to exercise the franchises in question, the demurrer to the answer is overruled and the information quashed.

WHITFIELD, P. J., AND TERRELL, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.